## ROZEMA v. NATIONAL CITY BANK OF SEATTLE.

(Circuit Court of Appeals, Ninth Circuit. October 29, 1923. Rehearing Denied December 3, 1923.)

No. 4072.

1. **Principal and agent ☞100(4)—Agreement to obtain letters of credit held to give implied authority to combine transactions and pledge goods and proceeds.**

An agreement that the W. Company would obtain letters of credit to enable the I. company to finance the purchase of sugar for different customers, who had established credits, and that 'all letters of credit should be assigned to W. Company, which would render an accounting when the deals were consummated, in the absence of an agreement as to how the letters of credit would be obtained, gave W. Company implied authority to combine the transactions in a single letter of credit, guarantee the payment of drafts drawn thereon and pledge all the goods and proceeds as security.

2. **Banks and banking ☞179—Where two transactions, covered by same letter of credit, showed loss, though one showed gain, bank held not subject to garnishment.**

Where two separate transactions for purchase of sugar in Hongkong by I. Company, on orders for customers, were covered by the same letter of credit, and payment of drafts drawn thereon were guaranteed and the goods and proceeds of the transactions were pledged with issuing bank as security, and one of the customers accepted the sugar while the other refused to accept, resulting in a net loss on both transactions, though there was a gain on one of them, the bank did not owe anything which could be garnished, as the I. Company could not ratify in part and repudiate in part the acts of the bank.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Edward E. Cushman, Judge.

Garnishment by Martin Rozema, assignee of the judgment of the Hale Company against the International Trading Company, against the National City Bank of Seattle as garnishee. Judgment for garnishee, and plaintiff brings error. Affirmed.

There is no controversy over the facts in this case. Early in May, 1920, the International Trading Company, engaged in the import and export business, sold to Montgomery Ward & Co. 500 tons of standard white sugar for immediate shipment from Hongkong by Kelley & Co. To provide for the payment of the sugar upon arrival, Montgomery Ward & Co. established an irrevocable letter of credit in Seattle in favor of the trading company. In order to obtain the sugar from Kelley & Co., it became necessary for the trading company to establish a letter of credit in Hongkong, and it made application to the National City Bank of Seattle for that purpose. The bank refused to issue the letter of credit, for the reason that the sugar market was speculative and the trading company did not have a sufficient credit standing. The bank suggested, however, that Frank Waterhouse & Co. might handle the transaction for the trading company for a share of the profits. The trading company thereupon applied to Waterhouse & Co., and the latter agreed to assist the former in the transfer of funds to enable it to consummate the deal as between buyer and seller, with the distinct understanding that all purchases and sales of the sugar in question were to be handled solely by the trading company and its associates, and the interest of Waterhouse & Co. was only in the transfer of funds. It was further agreed that Waterhouse & Co. should receive for its services in that behalf one-third

of the net profits, that all letters of credit should be assigned to it through its banking connections, and that, upon consummation of the deal, when the sugar arrived and was shipped from Seattle and all drafts paid, Waterhouse & Co. would render an accounting and remit to the trading company two-thirds of the net profits. This contract was exhibited to the bank, and thereupon, on May 17, 1920, the bank cabled the International Banking Corporation at Hongkong that it would accept drafts at 30 days' sight, drawn by Kelley & Co., covering 500 tons of standard white granulated sugar, shipping weights guaranteed by Lloyds, with Hongkong government certificates of inspection and analysis. On the same day the bank issued a formal letter of credit, authorizing Kelley & Co. to draw upon it for the sum of $210,000 at 30 days' sight, for account of Waterhouse & Co.

On or about May 20, 1920, the trading company sold to John Sexton & Co., 165 tons of standard white granulated sugar, and Sexton & Co. established a credit in Seattle in favor of the trading company for the purchase price. On May 22, 1920, the trading company entered into a further contract with Waterhouse & Co. covering this transaction, in all respects similar to the contract of May 17, except as to the quantity of sugar and the name of the buyer. On the same date the bank cabled the International Banking Corporation, increasing the amount of the previous letter of credit by the sum of $65,000. Between the Ward & Co. and the Sexton & Co. transactions a further sale was made by the trading company to a St. Paul house, but that sale was never consummated, and the deal is immaterial here, except for the fact that the amount of the sale was added to the letter of credit theretofore issued. After the two latter deals had been consummated between Waterhouse & Co. and the trading company, the bank added to the letter of credit theretofore issued the sum of $65,000, to cover the Sexton & Co. sale and the further sum of $128,000 to cover the sale to the St. Paul house. Waterhouse & Co. then guaranteed the payment of a sufficient sum to cover any drafts drawn and negotiated in virtue of the credit and pledged all goods and merchandise and the proceeds thereof as security. The guaranty was signed a few days after the letter of credit was issued, but doubtless as a part of the same transaction. On issuing letters of credit such as these, it is customary to give immediate advice by cable and then forward the letter of credit to the party in whose favor it is drawn, or to some banking institution at the point where the credit is to be utilized, but this custom could not be followed in the present instance for lack of sufficient time. On June 4, 1920, the trading company borrowed $500 from the bank and assigned to the bank the interest of the trading company in the amount due from Waterhouse & Co. on account of the Ward & Co. transaction. On June 23, 1920, a 30-day sight draft for $244,000 from Kelley & Co., covering both the Ward & Co. and the Sexton & Co. shipments, was accepted by the bank. The draft was accompanied by the usual documents, including the Hongkong government certificate of analysis, describing the sugar as "granulated white sugar (Java No. 24)" and "sugar (direct polarization) 98." On July 16, 1920, the Ward & Co. and the Sexton & Co. sugar arrived by the same shipment. The bank paid the Kelley & Co. draft 30 days after acceptance, and Ward & Co. paid its draft in full, but Sexton & Co. refused to accept the sugar or pay the purchase price for the reason that the quality of the sugar did not comply with its order or contract of sale. The bank thereupon sold the Sexton & Co. sugar in open market and credited the proceeds upon the indebtedness arising out of the payment of the draft. The net profit on the Ward & Co. transaction was $10,673.26, while the net loss on the Sexton & Co. transaction was $20,600.70. It further appears that Waterhouse & Co. has made no claim on the bank, and has agreed with the bank to divide the loss.

On the 18th day of June, 1920, the Hale Company recovered judgment against the trading company in the sum of $5,200, and the plaintiff, as assignee of that judgment caused a writ of garnishment to be served upon the bank. The foregoing facts appeared on the trial of the garnishment proceeding. Upon these facts the court entered judgment in favor of the garnishee, and the plaintiff in that proceeding has sued out the present writ of error.

Hadley, Hay & Hadley and Bausman, Oldham, Bullitt & Eggerman, all of Seattle, Wash., for plaintiff in error.

Almon Ray Smith and Poe, Falknor & Falknor, all of Seattle, Wash., for defendant in error.

Before HUNT and RUDKIN, Circuit Judges, and BOURQUIN, District Judge.

RUDKIN, Circuit Judge (after stating the facts as above). [1, 2] It will be seen from the foregoing statement that the letter of credit issued by the Chicago bank on account of the Montgomery Ward & Co. purchase called for standard white sugar; that the original letter of credit issued on account of the John Sexton & Co. purchase called for standard white granulated sugar; that the letter of credit issued by the defendant in error called for standard white granulated sugar; and that the certificates of analysis show that the shipment actually contained, granulated white sugar, and sugar (direct polarization) 98.5 per cent. In other words, the sugar shipped by Kelley & Co. did not satisfy the requirements of either the Montgomery Ward & Co. contract or the John Sexton & Co. contract. At least we are justified in so assuming, in the absence of any explanation as to what is meant by standard white sugar, called for by the Montgomery Ward & Co. contract, and granulated white sugar and sugar (direct polarization) 98.5 per cent. as shown by the certificate of analysis. Under these circumstances, if the obligation of the defendant in error is measured by the letter of credit as issued, the plaintiff in error is not entitled to recover for two reasons: First, because the defendant in error could not accept the draft in part and dishonor in part; and, second, if the defendant in error should have refused to accept or pay the draft on account of the John Sexton & Co. purchase it should, for the like reason, have refused to accept or pay the draft on account of the Montgomery Ward & Co. purchase, because, as already stated, the sugar did not satisfy or comply with the requirements of either contract as to quality; and had the defendant in error stood upon the strict letter of its contract, it would have refused to accept or pay the draft in its entirety, and in that event there would have been no sales and no profits. In view of the situation here disclosed the trading company could not ratify what was done in part, and disaffirm in part; it could not claim the benefits under one contract and repudiate the burdens under the other. But it is claimed that the Montgomery Ward & Co. transaction and the John Sexton & Co. transaction were separate and distinct; that separate and distinct letters of credit should have been issued; that there should have been separate and distinct drafts; and that the defendant in error should have accepted and paid the one, and should have refused to accept or to pay the other. Whether the two transactions were lawfully combined in a single letter of credit and in a single draft depends upon the relationship existing between the parties and the authority vested in Waterhouse & Co.

It will be remembered that there were no contractual relations between the defendant in error and the trading company. The former had expressly refused to extend credit to or deal with the latter. The

contract of the trading company was with the Waterhouse & Co. Waterhouse & Co. agreed to assist the trading company in obtaining letters of credit and to remit two-thirds of the net profits as soon as the deals were consummated and closed. There was no understanding or agreement as to how the letters of credit should be obtained, or as to their number, and whatever else may be said of the relationship existing between the parties, Waterhouse & Co. was necessarily invested with implied authority to do whatever was necessary or proper to obtain the letters of credit in the usual and customary way. It was under obligation to obtain letters of credit covering two different transactions, but in favor of the same partnership or corporation, and we do not think that it exceeded its authority when it authorized the combination of the two transactions in a single letter of credit. Nor did it exceed its authority in executing the guaranty. The defendant in error had refused to issue the letters of credit for the trading company with the bills of lading as sole security, and the parties necessarily understood that there must be further security on the part of Waterhouse & Co. The guaranty and the lien were reasonable and suitable security to the end in view, and were therefore within the contemplation of the parties.

For these reasons we are of opinion that the rights of the parties must be measured by the letter of credit as written; that the defendant in error has no money or property in its possession or under its control belonging to the trading company, and that the judgment of the court below should be affirmed.

It is so ordered.